UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT BURKS,

           Plaintiff,

   v.

JO ANNE B. BARNHART, Commissioner of Social Security,

           Defendant.

CASE NO.   C05-5508KLS

ORDER AFFIRMING THE
COMMISSIONER'S DECISION
TO DENY BENEFITS

Plaintiff, Robert Burks, has brought this matter for judicial review of the denial of his application for supplemental security income ("SSI") benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-three years old.[1] Tr. 35. He has a high school education and past work experience as a rental home and apartment maintenance worker, roofer, layout and fabrication worker, forklift operator, night watch person/attendant, and sheet metal apprentice. Tr. 18, 103, 105.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER
Page - 1

On February 25, 1997, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of November 1, 1992, both of which were denied at the initial level. Tr. 17, 35-38, 261A, 266. Plaintiff did not seek appeal of that denial. Tr. 266. Plaintiff filed a second application for SSI benefits on April 27, 1998, alleging disability as of October 10, 1991, due to "pain and loss of feeling in neck, back, and limbs due to trauma to mainly neck and back from rear end collision." Tr. 17-18.

A hearing was held before an administrative law judge ("ALJ") on October 15, 1999, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 474-525. The ALJ issued a decision on January 10, 2000, finding plaintiff had been disabled since April 27, 1998, but declining to reopen the two prior applications plaintiff had filed. Tr. 17, 266-73. On March 24, 2003, the Appeals Council granted plaintiff's request for review and remanded this matter to the ALJ for further proceedings, including a new hearing, because the record could not be located. Tr. 17, 279.

A second hearing was held on October 28, 2004, at which plaintiff, again represented by counsel, appeared and testified, as did a vocational expert. Tr. 526-82. On January 31, 2005, the ALJ issued another decision, finding specifically in relevant part:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since April 27, 1998;

(2) at step two, plaintiff had "severe" impairments consisting of degenerative disc disease of the lumbar and cervical spines and bilateral carpal tunnel syndrome;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a modified range of sedentary work, which precluded him from returning to his past relevant work; and

(5) at step five, as of April 27, 1998, plaintiff was not capable of performing other jobs existing in significant numbers in the national economy.

Tr. 23-24. The ALJ further found that there was "[n]o good cause or good reason" to reopen plaintiff's prior applications for disability and SSI benefits. Id. Plaintiff's request for review was denied by the Appeals Council on June 22, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 8; 20 C.F.R. § 416.1481.

On July 27, 2005, plaintiff filed a complaint with this court seeking review of the ALJ's decision. (Dkt. #1). Specifically, plaintiff argues that decision should be reversed and remanded to the Commissioner

ORDER
Page - 2

"with directions" that his disability claim "be decided based upon his application for benefits dated February 25, 1997," for the following reasons:

(a) the ALJ used an improper legal standard to decline to reopen plaintiff's prior applications; and

(b) the ALJ improperly disregarded the opinion of plaintiff's treating physician.

Plaintiff's Opening Brief, pp. 7-12. For the reasons set forth below, the undersigned finds no error on the part of the ALJ, and thus affirms the ALJ's decision. While plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ's Decision to Not Reopen Plaintiff's Prior Applications Is Not Reviewable

The Commissioner may apply administrative *res judicata* "to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application." Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1996). In general, the Commissioner's refusal to reopen a decision regarding an earlier period "is not subject to judicial review." Id. This is because, once an administrative decision becomes final, the Commissioner's decision to reopen a disability claim is "purely discretionary." Taylor v. Heckler, 765 F.2d 872, 877 (9th Cir. 1985). Further, since a discretionary decision is not a "final decision" within the meaning of 42 U.S.C. § 405(g), the Commissioner's refusal to reopen that decision "is not a 'final' decision subject to judicial review." Id. (citations omitted).

The doctrine of *res judicata* "should not be rigidly applied in administrative proceedings." Lester, 81 F.3d at 827; Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (*res judicata* applied less rigidly to

ORDER
Page - 3

administrative proceedings than to judicial proceedings).  While administrative *res judicata* also should not be "applied so as to 'contravene an overriding public policy or result in manifest injustice,'" it is only "[w]here the record is patently inadequate to support the findings the ALJ made," that its application will be "tantamount to a denial of due process." Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir. 1985) (quoting Thompson v. Schweiker, 665 F.2d 936, 940-41 (9th Cir. 1982)).

One exception to the above rule is "'where the [Commissioner's] denial of a petition to reopen is challenged on constitutional grounds.'" Udd v. Massanari, 245 F.3d 1096, 1098-99 (9th Cir. 2001).  This exception "applies to any colorable constitutional claim of due process violation that 'implicate[s] a due process right [either] to a meaningful opportunity to be heard' . . . or to seek reconsideration of an adverse benefits determination." Evans v. Chater, 110 F.3d 1480, 1483 (9th Cir. 1997) (citation omitted).  A constitutional challenge "that is not 'wholly insubstantial, immaterial, or frivolous' raises a colorable constitutional claim." Udd, 245 F.3d at 1099 (citation omitted).

Another exception to the above rule is "where the Commissioner considers 'on the merits' the issue of the claimant's disability during the already-adjudicated period." Lester, 81 F.3d at 827; Lewis v. Apfel, 236 F.3d 503, 510 (9th Cir. 2001).  If "such a *de facto* reopening occurs, the Commissioner's decision as to the prior period is subject to judicial review." Lester, 81 F.3d at 827.  However, "where the discussion of the merits is followed by a specific conclusion that the claim is denied on res judicata grounds, the decision should not be interpreted as re-opening the claim and is therefore not reviewable." Krumpelman, 767 F.2d at 589 (citing McGowen v. Harris, 666 F.2d 60, 68 (4th Cir. 1981)).

Plaintiff argues the ALJ erred in declining to reopen his prior applications, because he applied an improper legal standard in doing so.  In his decision, the ALJ found that there was "no good cause or other reason to reopen" plaintiff's prior applications. Tr. 21.  Plaintiff argues his request to reopen should have been granted "as a matter of right" under 20 C.F.R. § 416.1488, which reads in relevant part:

A determination, revised determination, decision, or revised decision may be reopened--

(a) Within 12 months of the date of the notice of the initial determination, for any reason;

(b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case; or

(c) At any time if it was obtained by fraud or similar fault.

See also Panages v. Bowen, 871 F.2d 91, 92 (9th Cir. 1989) (determination regarding claimant's application

ORDER
Page - 4

may be reopened within 12 months of initial determination as matter of right); Byam v. Barnhart, 336 F.3d 172, 175 (2nd Cir. 2003) (claimant may request application be reopened within twelve months of notice of initial determination for any reason).

Whether or not the ALJ erred in granting plaintiff's request "as a matter of right" under 20 C.F.R. § 416.1488(a), plaintiff has failed to show that the ALJ's determination not to do so is reviewable by this court. Plaintiff asserts "the constitutional argument arises," however, in that in not abiding by 20 C.F.R. § 416.1488(a), "the ALJ applied the wrong legal standard." Plaintiff's Opening Brief, p. 9. Although this assertion may be adequate to show the ALJ made an "error of law" under the Commissioner's regulations, it is wholly insufficient to state a colorable constitutional claim. See Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir. 1985) (finding claimant's constitutional allegation to be purely conclusory, unsupported by facts, and insufficient to withstand summary judgment).

That is, plaintiff makes no showing as to how the failure to comply with 20 C.F.R. § 416.1488, or other agency regulation, in itself rises to the level of a constitutional violation. It is not enough to merely state that such a violation has occurred. Rather, plaintiff has the burden to affirmatively show how his constitutional rights have been denied. He has not done so here. Indeed, it appears that in determining that there also was "no good cause" for reopening plaintiff's prior applications, the ALJ considered the medical evidence in the record back to the onset date of disability alleged therein, and found evidence of disability during that period sorely lacking. Tr. 21-22. As such, it is difficult to see how the ALJ's failure to comply with 20 C.F.R. § 416.1488(a) implicated plaintiff's due process or other constitutional rights.

Plaintiff argues the ALJ's finding that there was no good cause to reopen his prior applications also was flawed, because "there were very pertinent and important medical records that were missing," which "should have been sufficient to satisfy the good cause requirement." Plaintiff's Opening Brief, p. 9. These records apparently consisted of chart notes from plaintiff's treating physician, Dr. Joy P. Ruiz-Molleston, starting in mid-March 1995. Plaintiff, however, has not provided the court with these missing records, nor has he indicated an attempt to get them into the record. As such, the court has no way of determining the pertinence or importance of the alleged missing records.

While it appears the record contains what seem to be two pages of a physical examination dated March 13, 1995, on a form from Dr. Ruiz-Molleston's office, furthermore, it is not clear from the provider

1  signature who actually conducted this examination. Tr. 443-44. In any event, Dr. Ruiz-Molleston
2  has stated that it was not until January 17, 1996, that she first saw plaintiff. Tr. 311. Finally, plaintiff has
3  not explained how medical records from mid-March 1995, demonstrate he became disabled on November 1,
4  1992, the alleged onset date of disability contained in his prior applications.
5  II.      The ALJ Properly Evaluated the Opinion of Plaintiff's Treating Physician
6          The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the
7  medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the
8  record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the
9  ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must
10 be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir.
11 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact
12 inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts
13 "falls within this responsibility." Id. at 603.
14         In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be
15 supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a
16 detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
17 thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence."
18 Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the
19 ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).
20         The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of
21 either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a
22 treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and
23 legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the
24 ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739
25 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain
26 why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07
27 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).
28         In general, more weight is given to a treating physician's opinion than to the opinions of those who

do not treat the claimant. <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir.,2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

The record contains a declaration from Dr. Ruiz-Molleston, dated November 22, 1999, in which Dr. Ruiz-Molleston declared in relevant part as follows:

> I am the attending and treating physician for Robert J. Burks.  I have been his primary care giver since January 1996.  I am aware of his history of prior automobile accidents as well as his history of drug abuse.  It is my considered opinion, on a more probable than not basis, that he has been totally disabled from any gainful employment since his last automobile accident of November 1992, primarily from debilitating back pain, neck and shoulder pain caused by the injuries sustained in this automobile accident coupled with the residual effects of having been in prior automobile accidents.
>
> Robert Burks was first seen by me on January 17, 1996, and was diagnosed as having chronic low back pain, acute withdrawal syndrome from Heroin addiction, and major depression.  It was my opinion at that time once he had substance or chemical dependency treatment and had abstained from Heroin, received psychiatric counseling, and was treated for his back pain, he would eventually be able to return to some type of employment.  However, as time passed and even though Mr. Burks reports he has not been using Heroin or other drugs, he continues to have chronic back pain together with persistent neck, arm and hand pain.
>
> Initially, I expressed an opinion that I thought after a period of time he would be capable of sedentary work, but now being more familiar with his history and having treated Mr. Burks for the last three to four years, his physical condition has not materially changed since his first visit.  It is my opinion that he has been severely limited and unable to perform substantial gainful employment since he last worked in 1992.

Tr. 311.

The ALJ addressed this opinion in the context of determining whether to grant plaintiff's request to reopen his prior applications as follows:

> I find that there is no good cause or other reason to reopen the claimant's prior applications filed on February 25, 1997.  The claimant's date last insured was September 30, 1995 and the medical evidence of record indicates that the claimant was thought to be capable of sedentary work by Dr. Ruiz-Molleston in January, 1996 (Exhibit 13F).  In reaching this conclusion, I have carefully considered the declaration from Dr. Ruiz-Molleston dated November 23, 1999 (Ex. 22F).  Noting that she had treated the claimant since January 17, 1996, this physician noted that the claimant had been diagnosed at that time as having chronic low back pain, acute withdrawal syndrome

ORDER
Page - 7

> from heroin addiction and major depression. Dr. Ruiz-Molleston went on to declare, "It is my opinion that he has been severely limited and unable to perform substantial gainful employment since 1992" (Ex. 22F).
>
> However, this opinion as to disability back to 1992 is not persuasive. Dr. Ruiz-Molleston has expressed an opinion concerning a period during which she never saw the claimant. This doctor states that the claimant was "disabled" since 1992, even though she first saw the claimant in 1996. Her conclusion that the claimant was disabled back to 1992 is unsupported by the medical record.
>
> I also note that this physician has been misinformed about the status of the claimant's substance abuse. In her declaration of November 1999 (22F) and in a physical capacity examination (Ex. 13F), Dr. Ruiz-Molleston reported "acute withdrawal syndrome" as an impairment. Yet, at the hearing, the claimant denied the existence of such an impairment. In fact, the claimant admitted that he had continued to abuse heroin up to at least 4 months prior to the supplementary hearing. As Dr. Ruiz-Molleston was wrong about the claimant's withdrawal from substance abuse, her conclusions about the claimant's ability to function back to 1992 is based on incorrect information.
>
> Furthermore, Dr. Ruiz-Molleston did not provide any reference to objective findings to support her conclusion that the claimant was unable to work back to 1992. And her opinion was not supported by other doctors' findings. In August 1994, W. Brandt Bede, M.D., noted that there was no evidence of any cervical or lumbosacral radiculopathy or any neurologic deficit of the extremities" [single quotation mark in original] (Ex. 12F-7). Accordingly, Dr. Ruiz-Molleston's opinion does not provide any persuasive medical evidence concerning the claimant's physical and health status prior to January 1996.

Tr. 21-22.

Plaintiff argues the ALJ's findings suffer from a number of problems. First, plaintiff points to the fact that Dr. Ruiz-Molleston had been his treating physician since March 13, 1995. As discussed above, however, Dr. Ruiz-Molleston herself declared that she first saw plaintiff on January 17, 1996, and that it was not until January 1996, that she became his primary care physician. Tr. 311. In addition, the mere fact that a medical source is a treating physician does mean the ALJ is required to adopt the opinion of that physician. For example, the ALJ need not accept a treating physician's opinion, if it "is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149.

Here, the ALJ properly found Dr. Ruiz-Molleston's opinion to be unpersuasive. Plaintiff asserts the ALJ simply dismissed her opinion "out of hand" because she had not seen him as a patient during the period of time she thought he first had become disabled. Plaintiff's Opening Brief, p. 10-11. However, this clearly was not the only reason why the ALJ rejected her opinion. The ALJ noted that Dr. Ruiz-Molleston did not provide any objective medical findings to support her opinion that plaintiff's disability began in 1992. He

also pointed to Dr. Bede's examination in early August 1994, which was fairly unremarkable. Tr. 222-228. At that time, Dr. Bede found "no evidence of any cervical or lumbosacral radiculopathy nor any neurologic deficit of the extremities," and felt "no further treatment or investigation" was indicated other than proper body mechanics and a long-term conditioning program. Tr. 228. In addition, he commented that physical and neurologic examination and electrodiagnostic testing of plaintiff performed shortly after his automobile accident back in 1992, were for the most part normal. Tr. 223.

Plaintiff next argues the reasons the ALJ gave for rejecting Dr. Ruiz-Molleston's opinion ignores Social Security Ruling ("SSR") 83-20, which sets forth the Commissioner's policy when establishing a claimant's onset date of disability. Plaintiff's reliance on SSR 83-20, however, is misplaced. That ruling comes into play only <u>after</u> the claimant has met the "ultimate burden" of proving disability prior to the expiration of his or her insured status. <u>Armstrong v. Commissioner of the Social Security Administration</u>, 160 F.3d 587, 590 (9th Cir. 1998). In other words, it is only when the claimant has established disability <u>and</u> the "record is ambiguous as to the onset date of disability," does SSR 83-20 require the ALJ to "assist the claimant in creating a complete record" that "forms a basis for" establishing a disability onset date. <u>Id.</u> Plaintiff's argument, therefore, is without merit.

Lastly, plaintiff argues the ALJ "misunderstood or mischaracterized" Dr. Ruiz-Molleston's other opinions regarding his residual functional capacity, in stating that she found he was capable of performing sedentary work. Plaintiff's Opening Brief, p. 11. Dr. Ruiz-Molleston, however, completed a state agency physical evaluation form in mid-January 1996, in which she checked a box stating that plaintiff would be capable of performing sedentary work "<u>at least</u> half-time in a normal day to day work setting," and she estimated he would be "unable to perform <u>at least</u> half-time in a normal day-to-day work setting" for a period of twenty-four weeks to six months. Tr. 230 (emphasis added). Plaintiff's assertion that Dr. Ruiz-Molleston found he had the ability to work at the sedentary level for less than half-time thus is without merit. The same is true with respect to plaintiff's assertion concerning the state agency physical evaluation form completed by different medical source in late April 1998. Tr. 235-36.

As plaintiff himself points out, furthermore, both Dr. Ruiz-Molleston and the other medical source noted above found he would be so limited for at most six months and twelve weeks respectively. <u>See</u> Tr. 230, 236. Thus, even if plaintiff were correct in stating that these medical sources found him to be capable

performing work at less than the sedentary exertional level, this is insufficient to establish disability. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months). The court does agree with plaintiff that the ALJ's statement that Dr. Ruiz-Molleston was misinformed about his drug abuse was not an adequate reason to discount her opinion regarding his physical impairments. As discussed above, however, the fact remains that the ALJ gave a number of other valid reasons for rejecting that opinion.

## CONCLUSION

Based on the foregoing discussion, the court finds the ALJ properly determined plaintiff was not disabled. Accordingly, the ALJ's decision hereby is AFFIRMED.

DATED this 31st day of March, 2006.

Karen L. Strombom
United States Magistrate Judge

ORDER
Page - 10